*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MICHAEL JOSEPH LETVIN,

      Plaintiff-Appellant,

v

THE VILLAGE AT GRAND TRAVERSE
COMMONS CONDOMINIUM ASSOCIATION,

      Defendant-Appellee,

and

THE MINERVINI GROUP LLC, MONARCH
ASSET MANAGEMENT LLC, doing business as
MONARCH MANAGEMENT, and A.M.O. INC.,

      Defendants.

FOR PUBLICATION
July 13, 2026
1:55 PM

No. 376558
Grand Traverse Circuit Court
LC No. 2024-036913-NO

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

KOROBKIN, J.

In this premises liability dispute, plaintiff, Michael Joseph Letvin, appeals by right the trial court's order granting summary disposition in favor of defendant, the Village at Grand Traverse Commons Condominium Association.[1] We consider as a matter of first impression what duty is owed to a short-term rental guest of a condominium unit owner by a condominium association when the guest is injured in a common area of the condominium complex. For the reasons stated in this opinion, we hold that such an individual is an invitee of the condominium association. And because there are genuine issues of material fact as to whether defendant breached its duty to

---

[1] Three other defendants—the Minervini Group LLC, Monarch Asset Management LLC, doing business as Monarch Management, and A.M.O. Inc.—are not parties to this appeal. Accordingly, we use the term "defendant" to refer to the condominium association.

plaintiff as an invitee, the trial court erred in granting summary disposition in defendant's favor. We therefore reverse and remand for further proceedings.

## I. BACKGROUND AND FACTS

As our Supreme Court has observed, and as any seasoned Michigander could attest to in the early months of a calendar year, "Michigan, being above the 42nd parallel of north latitude, is prone to winter." *Hoffner v Lanctoe*, 492 Mich 450, 454; 821 NW2d 88 (2012). As such, removing snow and de-icing is often necessary to make conditions safe for ordinary life.

Defendant, the governing entity of a development known as the Village at Grand Traverse Commons ("the Village"), used a contractor, A.M.O. Inc., to provide snow removal and de-icing services. Under its contract, A.M.O. was to remove snow from parking lots and roads when there was an accumulation of two inches or more; to salt various defined surfaces anytime that snow was removed; upon inspection by snow removal crew, to salt other areas when ice was present; and to salt "previously identified potentially hazardous areas" when the two-inch snow threshold had not been reached "but potential safety issues exist[ed]." The president of defendant's board of directors testified that defendant's board took no responsibility for monitoring A.M.O.'s work, and the owner of A.M.O. testified that he was unaware of anyone associated with defendant who would have inspected A.M.O.'s work. The record does reflect, however, that A.M.O. was actively spreading salt in the Village during the period relevant in this case.

Plaintiff and his wife visited Traverse City the weekend of January 20 through 22, 2023 and stayed at a condominium unit within the Village that they had booked through Airbnb. The couple arrived the evening of January 20 and, after grabbing a bite to eat, moved their car to a parking lot outside of a restaurant in the Village. Plaintiff later testified that the weather that evening was "snowy and cold" and that "[t]here was ice in the parking lot at that time."

The next day, January 21, plaintiff woke up to what he attested was a "cold" morning with "[s]now on the ground" and the couple spent most of the day on a wine tour around the Traverse City area. The couple later was dropped off in the late afternoon "[r]ight in front of where [plaintiff's] car was parked," and, after spending about an hour and a half back in their Airbnb, the couple proceeded back into the parking lot to reach the Uber they had ordered to transport them to a restaurant off of the Village property. The scheduled Uber was stopped "pretty much right where [plaintiff's] car was parked" and plaintiff later observed that the parking lot at that time had "frozen slush and ice." As the couple walked to the Uber, plaintiff's wife, noticing that the parking lot was icy, turned around to warn plaintiff to be careful, and "literally, right after that" plaintiff fell. Plaintiff suffered a broken arm and went to the hospital.

Upon plaintiff's return from the hospital, about three hours after his fall, plaintiff's wife took photographs of the parking lot that exhibited the presence of ice in some areas of the lot. Plaintiff later testified that "[t]he entire parking lot was covered in ice" and "[t]he only part that was salted was the sidewalks leading into the buildings." Midday on January 22, 2023, plaintiff's wife took a few more photographs that showed snowy and icy conditions present in certain areas of the parking lot.

Plaintiff brought the instant premises liability action,[2] asserting that his injury was caused by defendant's failure to maintain the premises in a reasonably safe condition. Defendant moved for summary disposition, contending that it owed a duty to plaintiff only as a licensee and that it did not breach that duty. Plaintiff argued in opposition that he qualified as an invitee of defendant and that a reasonable jury could find that defendant was negligent.

The trial court granted defendant's motion. Relying on this Court's decision in *Gabrielson v Woods Condo Ass'n, Inc*, 349 Mich App 478; 28 NW3d 747 (2024), the court concluded that plaintiff was a licensee, rather than an invitee, of defendant and accordingly that defendant only owed plaintiff a duty to warn of unreasonably dangerous conditions. The court also concluded that there was no genuine issue of material fact as to whether plaintiff breached that duty, reasoning that "the condition was not unreasonably dangerous, as opposed to the normal condition of Northern Michigan parking lots during late January, and the ice and snow with regard to same."

Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). And in our review, we "consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). "Summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021) (quotation marks and citation omitted).

## III. ANALYSIS

In "[a]ll negligence actions, including those based on premises liability," a plaintiff must "prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). The parties' disagreement on appeal concerns the first two elements: duty and breach. Plaintiff contends that he was an invitee of defendant, and that there are genuine issues of material fact as to whether defendant breached its duty to plaintiff as an invitee. Defendant, by contrast, argues that it only owed plaintiff the standard of care afforded to a licensee, and that even if plaintiff was owed a duty as an invitee, no reasonable jury could find that defendant breached that duty.

---

[2] Plaintiff also sued A.M.O. as well as the Minervini Group, a developer and co-owner of property within the Village, and Monarch Management, which manages the Village. The Minervini Group and Monarch Management were subsequently dismissed by stipulated order, and the trial court granted A.M.O.'s motion for summary disposition, which plaintiff is not appealing.

As explained below, we agree with plaintiff. The trial court erred in classifying plaintiff as a licensee rather than an invitee, and genuine issues of material fact as to whether defendant breached its duty preclude summary disposition.

A. DUTY

Plaintiff first argues that, contrary to the conclusion of the trial court, defendant owed him a duty as an invitee, rather than a licensee. We agree.

"Duty is a threshold question of law for the court to decide before a case can get to a jury[,]" and "[i]n the context of premises liability, 'a landowner's duty to a visitor depends on that visitor's status.' " *Id.* at 111, 133, quoting *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). The law of our state classifies "persons who enter upon the land or premises of another" as (1) a trespasser, (2) a licensee, or (3) an invitee. *Kandil-Elsayed*, 512 Mich at 111, quoting *Stitt*, 462 Mich at 596 (quotation marks omitted). "An invitee is entitled to the highest level of protection under premises liability law: land possessors owe a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Janini v London Townhouses Condo Ass'n*, 514 Mich 86, 98; 22 NW3d 24 (2024) (cleaned up). Land possessors owe licensees a lesser duty. See *id.* They need "only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved[;]" there is "no additional duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Id.*, quoting *Stitt*, 462 Mich at 596 (quotation marks omitted).

This Court is thus tasked with determining whether plaintiff was entitled to "the highest level of protection under premises liability law" as an invitee of defendant, or the lesser obligation owed to licensees. *Id.* Generally speaking, "[a]n 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Gabrielson*, 349 Mich App at 497, quoting *Stitt*, 462 Mich at 596-597 (quotation marks omitted). "A person invited on the land for the owner's commercial purposes or pecuniary gain is an invitee, and a tenant is an invitee of the landlord." *Gabrielson*, 349 Mich App at 497 (quotation marks and citation omitted). Indeed, "a business purpose or a business or commercial benefit to the landowner [i]s a necessary requirement in order for a visitor to be deemed an invitee." *Stitt*, 462 Mich at 605. By contrast, "[a] 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Gabrielson*, 349 Mich App at 498, quoting *Stitt*, 462 Mich at 596 (quotation marks omitted). "Typically, social guests are licensees who assume the ordinary risks associated with their visit[,]" as are, for example, church visitors who attend a church for religious worship rather than "for an essential commercial purpose." *Stitt*, 462 Mich at 596, 606.

This case presents the first instance in which this Court must determine whether an Airbnb guest of a condominium unit owner is an invitee or a licensee of a condominium association when the Airbnb guest is injured in a common area of the condominium complex. At first glance, this Court's decision in *Gabrielson*, on which the trial court relied entirely, appears to point in defendant's favor. But a closer examination of the caselaw reveals a more complex legal landscape. We begin our analysis with an examination of *Gabrielson*, before considering the

-4-

significance of the Supreme Court's more recent decision in *Janini* and of other cases decided by this Court.

In *Gabrielson*, the plaintiff, who was renting a room from and living with a condominium unit owner, brought a negligence action against the condominium unit owner, the condominium association, and the manager of the condominium complex, among others, after she was injured while attempting to step onto a landing which these defendants "all had some amount of limited possession of." *Gabrielson*, 349 Mich App at 484, 486, 501. Relevant for our purposes is this Court's determination that the condominium association owed plaintiff the standard of care afforded to a licensee, which it supported with two reasons. See *id.* at 505-506. First, this Court deduced that the plaintiff was only a licensee because she lacked a direct business relationship with the condominium association. See *id.* The *Gabrielson* Court explained that "[t]he association was not holding out the common areas of the complex to plaintiff for business-related purposes" and "did not stand to reap any gain, whether pecuniary or otherwise, from offering its permission" for the condominium unit owner to rent out a portion of her unit. *Id.* "The association was simply fulfilling the executive function of considering and approving a request of a co-owner in accordance with the association's rules and regulations." *Id.* Second, this Court relied entirely on its prior holding in *Francescutti v Fox Chase Condo Ass'n*, 312 Mich App 640; 886 NW2d 891 (2015), that "condominium complexes do not owe a duty in premises liability to a unit owner who is a co-owner of the complex," in reasoning that "[t]here [wa]s no authority suggesting that [the condominium unit owner], as a co-owner, could create an invitee relationship between an association and a renter, who only possesses part of the co-owner's estate, when the co-owner is not owed that duty in the first place." *Gabrielson*, 349 Mich App at 506, citing *Francescutti*, 312 Mich App at 642-643.

Six months after this Court decided *Gabrielson*, however, our Supreme Court decided *Janini*, which expressly overturned *Francescutti* and analogized the relationship between a condominium association and a condominium unit owner to that between landlords and tenants. *Janini*, 514 Mich at 100-101, 104. The premises liability suit in *Janini* was brought by condominium unit owners against their condominium association after one of the plaintiffs sustained an injury in a common area of the condominium complex. *Id.* at 91. In considering the duty owed by the condominium association to a condominium unit owner in such a situation, the Supreme Court disagreed with *Francescutti*'s holding that condominium associations owed no duty to unit owners in condominium complex common areas and held that "when the master deed and bylaws governing a condominium complex provide that the condominium association is responsible for maintaining the common areas and the condominium's co-owners lack possession and control over those common areas, a condominium co-owner using the condominium complex's common areas and elements is an invitee." *Id.* at 90, 92, 102, 104, citing *Francescutti*, 312 Mich App at 643. In so holding, the Court explained that the relationship between the condominium association and the condominium unit owners was analogous to the landlord-tenant relationship because, via the condominium association's bylaws, the association assumed a duty to maintain common elements of the complex and plaintiffs ceded their control over those elements. *Janini*, 514 Mich at 101.

We conclude that *Janini* abrogated *Gabrielson* as applied to this case. As an initial matter, by explicitly overruling *Francescutti*, the Supreme Court completely dismantled any support provided by *Francescutti* for the *Gabrielson* Court's conclusion that the plaintiff renter was a

licensee of the condominium association. See *id.* at 104; *Gabrielson*, 349 Mich App at 506. Additionally, *Janini*'s application of the landlord-tenant analogy to the condominium context undermines *Gabrielson*'s alternative rationale for finding the plaintiff renter to be a licensee of the defendant condominium association—namely, that the plaintiff lacked a direct business relationship with the condominium association. See *Gabrielson*, 349 Mich App at 505-506. The Supreme Court's landlord-tenant analogy in *Janini*, coupled with the use of that analogy in other binding precedent predating *Gabrielson*—particularly *Stanley v Town Square Coop*, 203 Mich App 143; 512 NW2d 51 (1993)—elucidates that, contrary to what was said in *Gabrielson*, renters of condominium units like plaintiff do in fact provide a commercial benefit to condominium associations like defendant.

To explain, in *Stanley*, this Court determined the duty owed by a cooperative association to a plaintiff injured in the parking lot of the association when visiting a friend. The *Stanley* Court likened cooperative associations to landlords in that, just as a "landlord is the only one who can take the necessary precautions to ensure that the common areas are safe for those who use them[,] . . . a cooperative association has exclusive control over the common areas of the cooperative, and the association is the only one that can act to make the common areas safe." *Stanley*, 203 Mich App at 145-146. The *Stanley* Court therefore equated "the duty a cooperative association owes those who come on the premises" to "the duty a landlord owes those who come on its premises." *Id.* at 146. Applying this analogy, this Court explained that a tenant's guest, like a tenant, is an invitee of a landlord because "the landlord does receive some pecuniary benefit. Part of the rent paid to the landlord is the consideration for giving to the tenants the right to invite others onto the property." *Id.* at 148, citing *Aisner v Lafayette Towers*, 129 Mich App 642; 341 NW2d 852 (1983); see also *Nathan v David Leader Mgt, Inc*, 342 Mich App 507, 514 n 3; 995 NW2d 567 (2022) (explaining that "[t]enants are invitees of the landlord while in the common areas because the landlord has exclusive possession of the common areas and authorizes tenants to use them in exchange for rent" and because a landlord provides "tenants the right to invite others onto the property"), quoting *Stanley*, 203 Mich App at 147-148 (quotation marks omitted). The *Stanley* Court thus concluded that because the plaintiff's use of the parking lot was related to the cooperative association's pecuniary interests, the plaintiff was an invitee of the association regardless of whether the plaintiff was present in the parking lot as an association member's social guest or business invitee. *Stanley*, 203 Mich App at 148.

Then, in *Janini*, the Supreme Court explained that the business relationship between the condominium unit owners and associations afforded the unit owners invitee status:

> Plaintiffs paid money to the condominium association to maintain the common elements for their own use and enjoyment. Plaintiffs' ability to purchase a condominium unit, along with their rights to use the common elements, are subject to the condition that plaintiffs pay these dues to the condominium association and cede their individual authority over the common elements to the association. Further, by defendant's own bylaws, plaintiffs were assured that the premises would be made safe for plaintiffs' use. [*Janini*, 514 Mich at 101-102.]

*Janini* thus exposes a conflict between *Stanley* and *Gabrielson*. *Janini* reasoned that the relationship between a condominium association and its co-owners is analogous to that between a landlord and tenant, and that the business relationship between the parties through the payment of

association dues and cessation of individual authority over common elements rendered the co-owners invitees. *Janini*, 514 Mich at 100-102. Along similar lines, *Stanley* explained that a landlord or cooperative association receives a pecuniary benefit in exchange for allowing a tenant's or association member's guests to access that property such that they, too, are invitees. *Stanley*, 203 Mich App at 147-148; see also *Nathan*, 342 Mich App at 514 n 3. But *Gabrielson*, which did not cite or distinguish *Stanley* and predated *Janini*, held to the contrary in the context of a condominium association and its co-owner's guests. *Gabrielson*, 349 Mich App at 505-506. Accordingly, *Gabrielson*'s description of the relationship between a condominium association and a unit owner's guests conflicts with *Stanley*, especially when viewed through the lens of *Janini*.

"[C]onfronted with two conflicting opinions published after November 1, 1990," under the first-out rule, we are "obligated to follow the first opinion issued." *Bradley v Westfield Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365828) (quotation marks and citation omitted); slip op at 12; see also *Romain v Frankenmuth Mut Ins Co*, 483 Mich 18, 20-21; 762 NW2d 911 (2009) (applying the first-out rule). As *Stanley* was decided before *Gabrielson*, *Stanley* is the controlling precedent. Accordingly, the sole foundation of *Gabrielson* arguably remaining following our Supreme Court's explicit overruling of *Francescutti* in *Janini*—that the renter was not an invitee because the condominium association did not receive any benefit from the unit owner's ability to rent out a portion of her unit—does not bind this panel.[3] See *Bradley*, ___ Mich App at ___; slip op at 12.

Further, to whatever extent it may have been possible for *Gabrielson* and *Stanley* to exist side by side before *Janini*, we conclude that *Janini* abrogated *Gabrielson* with respect to the duty owed by a condominium association to renters of individual units who are injured in common areas maintained by the association. Applying the reasoning employed in *Stanley* in light of *Janini* leaves little doubt that defendant necessarily reaped a pecuniary gain, albeit an indirect one, from plaintiff's presence on the property. For just as part of the rent paid by a tenant to a landlord is the consideration for "the right to invite others onto the property," *Stanley*, 203 Mich App at 149, part of the fee paid to a condominium association like defendant is the consideration for maintaining

---

[3] We also note that, for two reasons, our application of the first-out rule is not hindered by the *Gabrielson* Court's citation to *DeBoard v Fairwood Villas Condo Ass'n*, 193 Mich App 240; 483 NW2d 422 (1992), decided the year before *Stanley*, for the proposition that "a guest of a condominium owner is a licensee of the condominium complex while in common areas." *Gabrielson*, 349 Mich App at 505, citing *DeBoard*, 193 Mich App at 241-242. First, in *DeBoard*, "it [was] *undisputed* that [the] plaintiff was a social guest, a licensee, in the . . . home when the accident occurred." *DeBoard*, 193 Mich App at 241 (emphasis added). Thus, the *DeBoard* plaintiff's status as a licensee was an agreed-upon premise of the *DeBoard* decision, rather than its holding. Second, and likely because the invitee-versus-licensee issue was not in dispute, the *DeBoard* Court did not address the key question that drove the *Gabrielson* analysis: whether the defendant stood "to reap any gain, whether pecuniary or otherwise, from offering its permission" for the plaintiff to access the premises. *Gabrielson*, 349 Mich App at 505. That analysis, by contrast, was central to this Court's holding in *Stanley*. See *Stanley*, 203 Mich at 147-148. Therefore, it is *Stanley*, not *DeBoard*, that establishes the precedent relevant to the question before us.

the common areas (such as the parking lot) in safe condition for the unit owners and their guests, *Janini*, 514 Mich at 101-102. The "additional expense and effort" needed for a condominium association to maintain the premises in a safe condition is thus "directly tied to [a condominium association's] commercial business interests": an association undertakes these efforts in exchange for the fee it receives, and in turn a condominium complex is more attractive to current and prospective condominium unit owners and their guests, whether social or commercial, when such common areas are maintained safely. See *Stitt*, 462 Mich at 604. Along similar lines, in consideration for the condominium unit owners "ced[ing] their individual authority over the common elements to the association," *Janini*, 514 Mich at 102, defendant had the obligation to maintain those premises in safe condition for the unit owners and their guests, including Airbnb guests like plaintiff here.

We therefore hold that a short-term rental guest of a condominium unit owner is an invitee of the condominium association on the common elements of the premises that the association maintains. Accordingly, the trial court erred in concluding that plaintiff was a licensee, rather than an invitee, of defendant.

## B. BREACH

Plaintiff next argues that there is a genuine issue of material fact as to whether defendant breached its duty to plaintiff as an invitee. We agree.

In contrast to the question of duty, "the question of breach—whether defendants' conduct in the particular case is below the general standard of care—is a question of fact for the jury." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted). Only "where the evidence presented to a court concerning breach generates no questions of fact [can] the issue be decided by the judge as a matter of law." *Id.* at 112 n 2, citing MCR 2.116(C)(10). As we have described, "an invitee" like plaintiff "is entitled to the highest level of protection under premises liability law." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted). A landowner must not only warn an invitee of any known dangers, but also "make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt*, 462 Mich at 597. And when a danger is posed to invitees by ice and snow conditions specifically, landowners must take "reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975); see also *Kandil-Elsayed*, 512 Mich at 150 (explaining that a landowner must "take reasonable care to protect against the hazards of the natural accumulation of ice and snow on the property").

We conclude that there are genuine issues of material fact as to whether defendant took reasonable steps within a reasonable time to abate the hazard of injury to plaintiff. See *Quinlivan*, 395 Mich at 261; see also *Kandil-Elsayed*, 512 Mich at 150. Although defendant highlights that A.M.O. spread thousands of pounds of salt in the Village the weekend of the incident, plaintiff presented record evidence that ice remained throughout the parking lot. Specifically, plaintiff testified that he was able to see ice, and photographs in the record demonstrate the presence of ice. See *Kandil-Elsayed*, 512 Mich at 149-150 (reversing a grant of summary disposition when there were questions of fact as to whether the ice and snow on which the plaintiff slipped "were open

and obvious, . . . and if so, whether the defendant should have anticipated that an invitee would be harmed by the condition").  In addition, testimony that defendant's board of directors took no responsibility for monitoring A.M.O.'s work and that A.M.O. was unaware of anyone associated with defendant who would have inspected A.M.O.'s work raises questions as to whether there was adequate oversight of A.M.O.'s snow and ice removal and inspection of the property.  See *Anderson v Wiegand*, 223 Mich App 549, 558; 567 NW2d 452 (1997) (finding a genuine issue of material fact in a suit arising from a plaintiff's fall on ice at an open house when there was a lack of testimony regarding whether the realtor "examined the sidewalk to determine whether salt or sand might be needed" and thus might have discovered dangerous conditions).

In light of these questions of fact, "we conclude there is insufficient evidence before us to decide whether the defendant breached its duty as a matter of law."  *Kandil-Elsayed*, 512 Mich at 151.  Whether defendant adequately "ma[d]e [its] premises safe," *Stitt*, 462 Mich at 597, by "tak[ing] reasonable care to protect against the hazards of the natural accumulation of ice and snow on the property," *Kandil-Elsayed*, 512 Mich at 150, is for the jury to decide, see *id.* at 112.

## IV.  CONCLUSION

For the reasons stated, we conclude that defendant owed plaintiff the duty of care afforded to an invitee, and that there are genuine issues of material fact as to whether defendant breached that duty.  Therefore, the trial court erred in granting defendant's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Plaintiff, as the prevailing party, may tax costs.  MCR 7.219(A).

/s/ Daniel S. Korobkin
/s/ Michael J. Kelly
/s/ Sima G. Patel